IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY TARVER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO. 5:14-CV-214 -MTT-MSH |
| VS. | : | |
| | : | |
| GREGORY MCLAUGHLIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**REPORT AND RECOMMENDATION**

Presently pending before the Court are Defendants' motions to dismiss for failure to state a claim (ECF Nos. 14, 30). For the reasons explained below, it is recommended that Defendants' first motion (ECF No. 14) be granted in part and denied in part, and that Defendants' second motion (ECF No. 30) be granted.

**BACKGROUND**

This action arises of out an alleged denial of medical care at Macon State Prison. According to the Complaint, on June 12, 2014, Plaintiff fell while working in the prison kitchen and his left ankle was badly cut on a "tray machine." Compl. 9, ECF No. 1. The officials supervising Plaintiff, Defendants Gloria West and Lt. Jackson, offered little assistance. Compl. 10. Plaintiff was subsequently taken for medical treatment where his leg was examined by Nurse Geneva Lamb.[1] *Id*. Plaintiff informed Lamb that he is a diabetic, which she confirmed in his medical records. *Id*. Lamb called Dr. Fye who

---

[1] Although Plaintiff identifies Defendant as Nurse Geneva Turner in his Complaint, a later filing identifies her as Nurse Geneva Lamb.

ordered that Plaintiff be given a "technical shot" (more likely a tetanus shot) and some pain medication. Compl. 11. Before the treatment could be provided, Dr. Fye called back and instructed Lamb not to give Plaintiff the pain medication. *Id.* Lieutenant Jackson (who was apparently present during the exam) then ordered Plaintiff to put his boot back on and return to his dorm. *Id.* Plaintiff was thus allegedly forced to leave without treatment.[2] *Id.*

On June 14, 2012, Plaintiff reported to the medical clinic where he contends that Nurse Larzenave unwrapped his bandaging and exclaimed "Oh my God." Compl. 12. She alerted Nurse Practitioner Willis who said that Plaintiff needed to see Dr. Fye and measured his wound at 15 cm. *Id.* Willis also prescribed a daily cleaning for the wound and set up an appointment for Plaintiff on June 21, 2012. *Id.* Plaintiff alleges that he filed several health care requests, but received delayed responses to his requests. Compl. 13. On June 21, Nurse Russell unwrapped his bandage, asked whether he had seen a doctor, and told him to wait while she told Dr. Fye. *Id.* He contends Russell returned with Nurse Practitioner Willis, who instructed Russell to arrange for Plaintiff to see Dr. Fye. *Id.* Plaintiff also alleges that Nurse Practitioner Willis told Plaintiff that he needed to see an "outside doctor" and that she would talk with Dr. Fye. Compl. 13-14. Plaintiff alleges that Nurse Russell cleaned his wound with a peroxide and sea water solution and told him that his leg would need to be removed or that he could die if he did not see Dr. Fye soon. Compl. 14. Plaintiff further contends that Nurse Russell told Plaintiff that she was going to talk with Dr. Fye to determine why Dr. Fye refused to see Plaintiff. *Id.*

---

[2] It is unclear whether Plaintiff received the tetanus shot.

2

On July 5, 2012, Plaintiff states that Nurse Frazier, while conducting a "wet to dry" treatment, likewise told Plaintiff that if Dr. Fye failed to see him soon his leg would need to be removed. Compl. 14. Nurse Frazier then notified Dr. Fye, who told Frazier that Warden McLaughlin had instructed her not to treat Plaintiff. Compl. 15. On July 19, 2012, Plaintiff alleges that Nurse Lamb treated his injury and told Plaintiff that Dr. Fye said that Warden McLaughlin ordered Dr. Fye to do "little of nothing for Plaintiff." *Id.* Additionally, Plaintiff contends that Nurse Lamb told him that: (1) his wound was not healing; (2) Warden McLaughlin was covering up what happened to him; and (3) Dr. Fye was complying with the Warden's orders. *Id.*

Plaintiff avers that at his next appointment, on August 7, 2012, Nurse Practitioner Willis informed him that the wound had turned dark "greenish-yellow" and that the odor had worsened. Compl. 16. Willis then contacted Physician Assistant Nash and asked Nash for a recommendation for treatment. Compl. 17. Nash recommended the sea water solution and the "wet to dry" treatment, which Willis informed Nash had previously been tried with no improvement in condition. *Id.* Plaintiff alleges that Nash told him that he needed to see an "outside doctor," and went to get Dr. Fye. *Id.*

Plaintiff also states that, at this same appointment, Nurse Russell overheard the previous discussion while treating Plaintiff's injury and told Plaintiff that "she didn't understand why Dr. Fye wouldn't send him to an outside doctor." Compl. 17. Nurse Russell completed the leg treatment and told Plaintiff that she was going to get Dr. Fye. Compl. 18. Nurse Russell returned with Dr. Fye who commented that "it[] looks good." *Id.* Dr. Fye then instructed Nurse Russell to let the wound get some air. *Id.* Nurse

3

Russell informed Dr. Fye that the wound had worsened and had an odor. *Id.* Dr. Fye then ordered the Plaintiff to be sent back to the dorm. *Id.*

On August 13, 2012, Plaintiff alleges that he submitted another health care request and was seen by Nurse Practitioner Willis. *Id.* Willis informed the Plaintiff that all she could do was prescribe him Motrin for his pain. *Id.* On the same date, Plaintiff alleges that he began using a borrowed cane in order to stand for the building inspection. *Id.* During the inspection, Warden McLaughlin saw Plaintiff and inquired about his condition. Compl. 19. Plaintiff answered that he fell two months ago and is diabetic. *Id*. Plaintiff was sent to medical where they informed him that the injury had worsened. *Id.* He was admitted to the infirmary where they began intravenous therapy and treatments on his leg. *Id.*

Plaintiff was admitted to Atlanta Medical Center for treatment on September 19, 2012. Compl. 20. His doctor, Dr. Henderson, treated the leg for a few weeks, but determined that the Department of Corrections waited too late to bring him to the hospital. *Id.* Dr. Henderson allegedly said that, had treatments been done earlier, Plaintiff would have had a 70% chance to save his leg. *Id.* Plaintiff underwent one amputation, from the calf down, but the infection continued to spread. *Id.* A second amputation was performed above the knee to fully remove the infection. Compl. 21. Plaintiff states that he recovered from the surgery within two weeks. *Id*. Afterwards, Plaintiff was transferred back to Macon State Prison. *Id.*

After preliminary review, the claims against Defendants McLaughlin, Fye, Lamb, Frazier, Russell, Willis, Nash, and Jackson were allowed to proceed. Defendants moved

to dismiss the complaint.   These motions are ripe for review.

## DISCUSSION

Defendants filed two motions to dismiss Plaintiff's Complaint (ECF Nos. 14, 30). In the first motion to dismiss, Defendants Frazier, Fye, Jackson, and McLaughlin move to dismiss for failure to state a claim or, alternatively, qualified immunity and Eleventh Amendment immunity (ECF No. 14).  Defendants Lamb, Nash, Russell, and Willis, likewise move to dismiss (ECF No. 30).   For the reasons explained below, it is recommended that Defendants' first motion be granted in part and denied in part, and that Defendants' second motion be granted.

**I.    Defendants Frazier, Fye, Jackson & McLaughlin's Motion to Dismiss**

Defendants Frazier and Jackson contend that Plaintiff fails to state a cognizable claim against them.  The Court agrees, and recommends dismissal as to these two Defendants.  However, Plaintiff has sufficiently alleged a violation of clearly established law regarding the conduct of Defendants Fye and McLaughlin. It is therefore recommended that their motion to dismiss be denied.

A.    Failure to State a Claim

Defendants argue that Plaintiff fails to state a claim for deliberate indifference and that his Complaint should be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).  When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a

5

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

### 1. Defendants Frazier and Jackson

Defendants Frazier and Jackson argue that Plaintiff's Complaint fails to state a claim of deliberate indifference in violation of the Eighth Amendment. To survive this motion, Plaintiff's Complaint must contain sufficient factual allegations which, taken as true, establish: (1) that his leg injury constitutes an objectively serious medical need; (2) that Defendants were deliberately indifferent to that need in that they had (a) subjective knowledge of potential serious harm, (b) they disregarded that risk, and (c) their conduct amounted to more than mere negligence; and (3) that Defendants' indifference caused Plaintiff injury. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). The Court considers below whether Plaintiff's Complaint meets these requirements.

Because Plaintiff alleges that he is diabetic, suffered from a leg injury which was measured at 15 cm, required a tetanus shot, and required amputation after going untreated,

6

the Court finds that he has alleged an objectively serious medical need, meeting the first requirement of the analysis. *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment[.]"). Next, Plaintiff must sufficiently allege that Defendants were deliberately indifferent to that need and that such deliberate indifference caused Plaintiff to suffer some injury. Defendants argue that Plaintiff has not sufficiently alleged that they had subjective knowledge of the condition or the extent of Plaintiff's injury. Def.'s Br. in Supp. of Mot. to Dismiss 9-13, ECF No. 14-1. This argument is persuasive for Defendants Jackson and Frazier.

Defendant Jackson's only interaction with Plaintiff was limited to his escorting Plaintiff to and from his initial medical treatment. Compl. 10-11. The fact that Defendant Jackson told Plaintiff to put on his boots and leave medical after he received treatment does not constitute deliberate indifference. Plaintiff has failed to state a claim against Defendant Jackson.

Similarly, Plaintiff's only alleged interaction with Defendant Frazier occurred nearly a month after his injury. Compl. 14. Defendant Frazier treated Plaintiff's injury and attempted to get Plaintiff further treatment from Dr. Fye. *Id.* The Court infers that Plaintiff believes that he should have received additional or different treatment from Defendant Frazier. However, a mere disagreement with the treatment received does not give rise to a claim for deliberate indifference. *See Hamm v. Dekalb Cnty.*, 774 F.2d 1527, 1575 (11th Cir. 1985). It is thus recommended that the motion to dismiss be granted with regard to Defendants Jackson and Frazier.

### 2. *Defendants Fye and McLaughlin*

Plaintiff makes the following allegations regarding Defendants Fye and McLaughlin: Defendant Fye was informed by Plaintiff's initial nurse that he is a diabetic and sustained an injury to his leg. Compl. 11. With this knowledge, Defendant Fye prescribed a tetanus shot and pain relievers. *Id.* Before any treatment was administered, Defendant Fye called back and told the nurse to withhold the treatment. *Id.* Plaintiff then repeatedly sought medical treatment over the next the next two months and was seen by a number of different nurses, including Defendants Lamb, Larzenave, Willis, Russell, and Frazier, and by a physician's assistant, Defendant Nash. Compl. 11-18. At each examination, the nurses cleaned Plaintiff's wound, noted that his injury was getting progressively worse—even to the point of turning green and having an odor—and requested that Dr. Fye examine Plaintiff's leg. *Id.* Nurse Practitioner Willis informed P.A. Nash that Plaintiff's wound was infected. Compl. 16. Nash then similarly recommended cleaning the wound, requested that Dr. Fye see Plaintiff, and stated that she believed Plaintiff needed to be transported to an outside doctor for treatment. *Id.* Despite the repeated pleas from the nurses and P.A. Nash, Dr. Fye failed or refused to see Plaintiff. Compl. 11-18.

Additionally, Plaintiff alleges that Warden McLaughlin ordered Dr. Fye not to provide Plaintiff with treatment, and that Dr. Fye followed this order. *Id.* Dr. Fye finally saw Plaintiff almost two months after his injury. Compl. 18. She did not order any treatment for his visibly infected leg; Dr. Fye merely directed the nurse to let the wound "get some air." *Id.* As a result of the spread of the infection and lack of prompt

treatment, Plaintiff's leg required amputation at the Atlanta Medical Center where his doctor told him that earlier treatment may have prevented amputation. Compl. 20-21.

Plaintiff argues that the above described actions by Defendants Fye and McLaughlin show that they were deliberately indifferent to his severe medical needs. "The Eighth Amendment's prohibition against cruel and unusual punishments protects a prisoner from deliberate indifference to serious medical needs." *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014) (internal quotation marks and citations omitted). "[T]o prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Bingham v. Thomas*, 654 F.3d at 1176 (internal quotation marks and citation omitted). Deliberate indifference requires a showing of a "subjective knowledge of a risk of serious harm" and "disregard of that risk . . . by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted).

Here, Plaintiff has alleged that both Defendants Fye and McLaughlin refused medical treatment for his injured leg, resulting in its amputation. Plaintiff specifically alleges that Defendant McLaughlin ordered that Plaintiff not be treated and that Defendant Fye complied with this order. He further avers that upon reaching the Atlanta Medical Center his doctor informed him that had he been brought in earlier for treatment, there was

a 70% chance he would not have required amputation. Plaintiff alleges that the Defendants failed to treat him, delayed his care, provided grossly inadequate care, or made a decision to use an easier but less efficacious course of treatment. The allegations, taken as true, constitute "knowledge of the need for medical care and intentional refusal to provide that care," or "medical care which is so cursory as to amount to no treatment at all." Both are viable grounds for an Eighth Amendment deliberate indifference claim. *See Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989); *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985). Consequently, Plaintiff has stated a claim against Defendants Fye and McLaughlin for deliberate indifference.

    B.    <u>Qualified Immunity—Defendants Fye and McLaughlin</u>

Defendants Fye and McLaughlin also contend that Plaintiff's claims against them in their individual capacities should be dismissed because they are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was

acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he or she was acting within her discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004). It is clear that Defendant McLaughlin was acting within his discretionary authority when he ordered Defendant Fye not to render medical aid to Plaintiff, as was Defendant Fye when she complied. *See, e.g., Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (explaining that "discretionary authority" includes "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority) (internal quotation marks and citation omitted). Because that determination is made, the burden then shifts to Plaintiff to show that the Defendant is not entitled to qualified immunity. "To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson,* 501 F. App'x at 916 (citation omitted).[3]

As found above, Plaintiff has alleged the violation of a constitutional right. The Court must therefore determine whether that right was clearly established. "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in

---

[3] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *McCullough*, 559 F.3d at 1205.

original).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted).  The Eleventh Circuit has explained that:

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).  Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted."  *Id.* (quotation marks and citation omitted) (emphasis and alteration in original).  The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation."  *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Several Eleventh Circuit cases are instructive here.  Binding authority describes different scenarios which amount to deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  Examples relevant to this case include: having

knowledge of an inmate's need for medical care and refusing to provide the care, *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989); delaying the treatment of serious medical needs, *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994), *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990); and providing grossly inadequate care or taking an easier or less efficacious course of treatment. *See, e.g., Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1985).

Accepting Plaintiff's allegations as true, Defendant McLaughlin ordered Defendant Fye not to treat Plaintiff's serious injury. Defendant Fye complied with that order despite pleas from other medical personnel for treatment and despite knowledge that Plaintiff is diabetic. Defendants' failure to treat increased the risk of Plaintiff's amputation. These actions fit squarely into the Eleventh Circuit examples listed above. Plaintiff has alleged a violation of a clearly established constitutional right, and Defendants Fye and McLaughlin are not entitled to qualified immunity at the dismissal stage. Defendants' motion to dismiss should be denied with respect Defendants Fye and McLaughlin.[4]

## II.   Defendants Lamb, Nash, Russell, and Willis' Motion to Dismiss

Defendants Lamb, Nash, Russell, and Willis also argue that Plaintiff's Complaint fails to state a claim of deliberate indifference in violation of the Eighth Amendment. Again, to survive this motion, Plaintiff's Complaint must contain sufficient factual

---

[4] Each of the Defendants also contends that the claims against them in their official capacities should be dismissed because they are entitled to Eleventh Amendment immunity. Plaintiff clarified in his Response that he sued Defendants only in their individual capacities. Pl.'s Supp. Br. 2, ECF No. 31.

allegations which, taken as true, establish: (1) that his leg injury constituted an objectively serious medical need; (2) that Defendants were deliberately indifferent to that need in that they had (a) subjective knowledge of serious harm that would result from his failure to take the actions Plaintiff requested, (b) they disregarded that risk, and (c) their conduct amounted to more than mere negligence; and (3) that Defendants' indifference caused Plaintiff injury.  The Court considers below whether Plaintiff's Complaint sufficiently alleges these requirements.

As previously explained, Plaintiff has sufficiently alleged that he has an objectively serious medical need, his leg injury.  Thus, the relevant inquiry here is whether Plaintiff has sufficiently alleged that Defendants were deliberately indifferent to that need and that such deliberate indifference caused Plaintiff to suffer an injury.

Defendants argue that Plaintiff fails to state a claim of deliberate indifference against them because his allegations show that they responded reasonably to his known injury.  Def.'s Br. in Supp. of Mot. to Dismiss 8-13, ECF No. 30-1.  Plaintiff alleges that the Defendants repeatedly treated his leg injury over an eight week period—they provided sea water and "wet to dry" treatments, recommended that Plaintiff be seen by Dr. Fye, actually contacted Dr. Fye, and prescribed medication for him in addition to other treatments already being provided.  Compl. 11-18.  Plaintiff concludes that Defendants' methods of treatment were insufficient for his injury.  However, disagreement over the mode of treatment does not constitute deliberate indifference for the purposes of the Eighth Amendment.  *See Hamm v. Dekalb Cnty.,* 774 F. 2d 1527, 1575 (11th Cir. 1985) ("an inmate's desire for a different mode of treatment does not rise to the level of deliberate

14

indifference.")  Negligence in treatment, even rising to the level of medical malpractice, is not deliberate indifference.  *Estelle*, 429 U.S. at 106.  Instead, the treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks and citations omitted).

Plaintiff has not alleged such treatment here.  To the contrary, Plaintiff alleges that these Defendants continuously treated him and attempted to get him additional treatment from Dr. Fye.  Plaintiff has thus failed to allege that Defendant Lamb, Nash, Russell, or Willis have exhibited conduct that meets the standard for deliberate indifference; rather, his allegations show that these Defendants were diligent in providing care within their means.  Plaintiff makes no allegation that any of the above Defendants could have done more without Dr. Fye's approval.  Consequently, the claims against Defendants Lamb, Nash, Russell, and Willis should be dismissed for failure to state a claim and Defendants' motion should be granted.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants' first motion (ECF No. 14) be granted in part, dismissing Defendants Jackson and Frazier, and denied in part, retaining Defendants Fye and McLaughlin.  Defendants' second motion (ECF No. 30) should be granted.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The District Judge shall make a de novo determination of those portions of the Recommendation to which objection

is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO RECOMMENDED, this 25th day of June, 2015.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE